DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Robert Benson, has appealed from his conviction by the Summit County Court of Common Pleas for felonious assault. We affirm.
On September 2, 1999, Defendant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2); one count of falsification, in violation of R.C. 2921.13(A)(3); and one count of illegal use or possession of drug paraphernalia, in violation of R.C.2925.14(C)(1).[1] On March 3, 2000, Defendant pled guilty to the charge of falsification and the charge of illegal use or possession of drug paraphernalia. On March 7, 2000, following a jury trial, Defendant was found guilty of felonious assault. On March 20, 2000, Defendant was sentenced on all counts. Defendant timely appealed and has raised three assignments of error for review.
 ASSIGNMENT OF ERROR I The trial court erred in denying [Defendant's] motion for a mistrial[,] violating his right to a fair and impartial trial[,] when the State's witness engaged in misconduct and testified about evidence the court had previously suppressed.
In his first assignment of error, Defendant has argued that the trial court erred in denying his motion for a mistrial. Specifically, Defendant has argued that when a witness gave testimony on evidence previously suppressed by the trial court, a mistrial should have been granted to preserve his right to a fair trial.
"The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." State v. Treesh (2001), 90 Ohio St.3d 460, 480, citing Crim.R. 33 and State v. Sage (1987), 31 Ohio St.3d 173, 182 "Amistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." State v. Reynolds (1988),49 Ohio App.3d 27, 33. It is only necessary to grant a mistrial when a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 127.
In this case, the police officer testified about the identification of Defendant in a photo line-up by a witness who had been in the house at the time of the assault. This testimony followed the officer's description of the identification of Defendant by the victim herself. The photo line-up identification by the witness had been previously suppressed by the trial court. Immediately after this testimony was given, defense counsel objected and the objection was sustained. Additionally, the trial court instructed the jury that "there were statements made by Detective Bosak that there was some type of an identification of the Defendant by a Debra Gipson. Those statements are not admissible. You are to totally disregard anything as it relates to those statements." We presume that the jury followed the trial court's instructions, including instructions to disregard testimony. State v. Loza (1994), 71 Ohio St.3d 61, 75; Statev. Zuern (1987), 32 Ohio St.3d 56, 61. This Court also notes that on the stand the same witness subsequently identified Defendant as the attacker. This identification was not objected to by Defendant.
Given the context of the response and the curative instruction by the court, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for mistrial and that the statement made didnot deprive Defendant of his right to a fair trial. Accordingly, we overrule Defendant's first assignment of error.
 ASSIGNMENT OF ERROR II The trial court erred in denying [Defendant's] motion for [a] judgment of acquittal.
 ASSIGNMENT OF ERROR III The evidence presented at trial was insufficient to convict [Defendant] of felonious assault, denying him liberty without due process of law, when the State failed to prove the elements of the crime beyond a reasonable doubt.
In his second and third assignments of error, Defendant has argued that the evidence presented at trial was insufficient as a matter of law to sustain his conviction for felonious assault. The evidence presented at trial does not support such a contention.
The Supreme Court of Ohio articulated the following standard of review to determine the sufficiency of the evidence in the case of a conviction:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Thompkins, 78 Ohio St.3d 380, 386; State v.Feliciano (1996), 115 Ohio App.3d 646, 652-53.
Defendant was charged with felonious assault under R.C. 2903.11(A), which states in part:
No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance.
The evidence presented at trial, when reviewed in a light most favorable to the State, is sufficient to sustain a conviction on this charge.
The victim testified that on the night in question, she and two friends were doing some home improvement work at her house. Defendant and another gentleman arrived at her home seeking to purchase some crack cocaine. The victim informed him that while she did not have any crack to sell, she would share some of her own personal supply with him. The two then consumed some of the crack cocaine in a bedroom at the victim's home. The victim testified that when she went to the dresser drawer to obtain more crack to smoke, Defendant attacked her with a machete type knife and attempted to cut her hand off. The victim ran into the living room to flee from Defendant's attack and in the process stumbled over some of the furniture from the bedroom that had been stacked in the living room during the remodeling work. She testified that her television fell on her shoulder and she briefly lost consciousness. When she regained consciousness, the victim awoke to see Defendant coming at her head with the machete. The victim put her left arm up to protect herself and Defendant cut the victim's arm four or five times. Defendant then tried to drive the knife into the victim's stomach. The victim testified that she grabbed the blade of the knife to protect her abdomen and received cuts on her fingers. The victim testified that Defendant then fled the house and, in the process, lost one of his sandals in the victim's living room and the other in the front yard of the house.
Debra Gipson, one of the friends who was assisting with the home improvement work on the evening in question, identified Defendant as one of the gentleman who had been at the house. She further indicated that it was Defendant who had gone into the bedroom with the victim. She testified that she heard fighting, things being thrown about, and the victim screaming. Ms. Gipson hid in another bedroom during the attack because she indicated that she was too afraid to move. After Defendant had fled the house, Ms. Gipson came out from the bedroom to find the victim injured and bleeding.
The victim was taken to Akron General Hospital for treatment of her wounds. While there, she required surgery to repair the extensive injury to her arm. Dr. Mark Cutright, the physician who treated the victim at the hospital, testified that the victim told him that she had been attacked by a man wielding a machete. Dr. Cutright further testified that the victim had an open fracture/dislocation of her left elbow with some abrasions or lacerations to the fingers. Dr. Cutright stated that the history given by the victim was consistent with the injuries. Additionally, he noted that in order for an injury such as the one here to occur, the weapon had to be of substantial size in order to generate the force necessary to cause the fracture and dislocation of the victim's arm.
Officer Brian Harding testified that he interviewed the victim at the hospital following the attack. He stated that the victim told him that she had been attacked by a man using a machete. She described the suspect as being a dark complected, black male, around thirty-four years old, approximately six feet one to six feet two inches tall, and between one hundred and sixty pounds and one hundred and eighty pounds. She further told him that the suspect had straight hair and a pitted face. The detective also got a description from the victim of the weapon used. She described the weapon as a very large, white-handled knife. Following his interview of the victim, Officer Harding called in the detective bureau due to the severity of the case. He then proceeded to the scene of the crime with the detectives assigned to this matter. Officer Harding testified that upon arriving at the victim's home he found a man's sandal in the yard. Detective William Bosak, the lead detective on this case, testified that when he secured the crime scene, a man's sandal matching the one found in the yard was found inside the house.
Detective Kostich testified that he prepared a photo array for the victim to review utilizing the description of the suspect she had previously given Officer Harding. Detective Kostich then sat with the victim as she reviewed the photographs that matched the description. Detective Kostich testified that after the victim had reviewed a couple hundred pictures she identified Defendant as her attacker. He further testified that she indicated that she was positive that Defendant was the person who had attacked her. Detective Bosak confirmed that the victim had positively identified Defendant in a photo line-up.
Officer William Price testified that a short time after the attack on the victim occurred, Defendant was arrested pursuant to a burglary in progress call. Defendant was found in a vacant apartment. In this apartment, Officer Price found a machete knife with a white handle. The victim identified this knife as the weapon used against her.
Defendant stipulated to the admission of a polygraph exam. William D. Evans, II testified as the administrator of the exam. Defendant was asked four relevant questions during the course of the polygraph exam. The first question was, "[w]ere you present to see Pam Cooper get cut?" The second question asked, "did you cut Pam Cooper?" The third question was, "did you handle the knife used to cut Pam Cooper?" The fourth question was, "are you the one that cut Pam Cooper?" Defendant answered no to each of the questions. Mr. Evans testified that based upon the physiological results garnered during the test, it was his opinion that Defendant was being deceptive.
Upon a review of the evidence presented as described above, it is clear that there was sufficient evidence to sustain Defendant's conviction for felonious assault. Therefore, the trial court did not err in denying Defendant's motion for acquittal. Defendant's second and third assignments of error are without merit.
Defendant's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BAIRD, P. J. SLABY, J. CONCUR
[1] This Court notes that Defendant only assigns as error matters concerning his conviction for felonious assault.